PER CURIAM.
Appellants, constituting the Board of Adjustment of the City of Tampa, overruled the denial of a permit to construct two apartment buildings in a subdivision zoned R-1A, which essentially restricts the area to single family dwellings and playgrounds. It is significant to note here that in addition to the above restrictions, R-1A zoning allows for certain “conditional uses” such as, among others, churches, schools and libraries, upon certain conditions being met. Appellee, an aggrieved resident of the subdivision, brought certiorari in the circuit court of Hillsborough County to review the aforesaid action of appellants.[1] The trial judge granted certiorari and reversed the action of the appellants, hereinafter called the Board of Adjustment.
The crux of the case is whether the Board of Adjustment had authority to act in the manner complained of. The trial judge was of the opinion that it did not have such authority since the effect of its action was to “rezone” the area in question; and, he held, only the “governing body” of the city has such power under the provisions of § 176.01 et seq., F.S.A. We think he was correct.
If the Board of Adjustment had any such authority it had to come pursuant to the provisions of a special act of the legislature, i. e., Ch. 59-1909, Laws of Fla. 1959.[2] Section 176.14(3), F.S.A., confers on boards of adjustment the power to grant a "variance” from the terms of a zoning ordinance, but it does not authorize them to permit a “change of use” of property specifically restricted by zoning. Appellants contend, however, that the above men *24 tioned special act does grant such power to the Board of Adjustment of the City of Tampa. The material provisions of that act are as follows:
“Section 1. In addition to the powers granted to the Board of Adjustment of the City of Tampa by Section 176.14, Florida Statutes, any such Board appointed for the City of Tampa, is authorized upon appeal in specific cases to grant such variance from the terms of the zoning ordinances of said City permitting changes in the u¿e of property as will not be contrary to the public interest, where owing to special conditions, a literal enforcement of The provisions of such ordinances will result in unnecessary hardship, and so that substantial justice may be done. * * * ” (Italics supplied)
In rejecting appellants’ contention the trial judge, in a well-considered opinion, stated as follows:
“* * * To construe these acts as giving said Board of Adjustment the power contended for would require this Court to make the following findings:
(1)That these legislative acts permit the Board of Adjustment to change zoning previously adopted by the City Council. The Supreme Court, in the Josephson case,[3] held that such power would constitute the power to zone, which can only be exercised by the governing authority of a municipality. It would thus be necessary for this Court to construe the legislative acts as constituting the Board of Adjustment the ultimate governing authority of the City of Tampa (except for the further complication hereafter mentioned) on zoning matters. It is not possible, under the terms of said legislative acts, to construe same as constituting the Board of Adjustment as the initial governing authority for zoning purposes because the language of the acts gives said Board the authority “to grant such variance from the terms of the zoning ordinance of said city — ”. Obviously the zoning ordinances referred to are not enacted by the Board of Adjustment. Assuming the Legislature has the authority to constitute separate governing authorities for the same municipality for zoning purposes, it would require an extremely strained construction of said two acts to read such an intention from the language thereof, much less an intention to create one governing authority with power to set aside acts done by another governing authority. [Footnote supplied]
(2) Assuming further, however, that the two legislative acts were construed as constituting the Board of Adjustment as a governing authority with power to change zoning ordinances adopted by the City Council so as to permit the use of lands prohibited by ordinances enacted by the latter, an increasingly strange situation would result when it is considered that Section 176.08 of the Florida Statutes provides for the appointment of boards of adjustment by the governing authority of the municipality. Such appointment is not mandatory under the provisions of said statute, so thus, if the above construction is indulged in, the Legislature would have endowed the Board of Adjustment as some sort of superior governing body with the power to legislate in the zoning field, but at the same time would have left the creation of such Board to the discretion of the very City Council whose zoning ordinances said Board would have power to change.
(3) Finally, and in the opinion of this Court, of great importance in considering such a construction, would be the provisions of Sections 176.16 through *25 176.19 of the Florida Statutes. These are the provisions which permit review of any decision of boards of adjustment by circuit courts through certiorari proceedings. These proceedings have been construed to constitute trials de novo. Under the provisions of Section 176.19 the court can reverse or affirm, wholly or partly, or may modify, the decisions of boards of adjustment. If this Court places a construction of Chapter 63-1983 to permit such action as the Board of Adjustment has taken here, it would logically seem to follow that just as the Board of Adjustment could reverse the action of the City Council, so could the circuit court in such certiorari proceedings proceed to change the zoning again. Such a conclusion would endow this Court with legislative authority for the City of Tampa in zoning matters and to effectively determine the wisdom of zoning ordinances enacted by the City Council. It is well settled that such a determination is not for the courts. ([City of Miami Beach v. Ocean & Inland Co., Fla.] 3 So.2d 364, [Gordon v. Town of Surfside, Fla.] 8 So.2d 497, [Segal v. City of Miami, Fla.] 63 So.2d 496).[4] [Footnote supplied]
This Court cannot construe said Special acts in such manner, and it is not necessary to do so. It is to be noted that under Section 39-5 of said City Code the Board of Adjustment is given the authority to grant permission for the conditional uses provided for R-1A and R-l zoning districts. Such authority is not specifically given in Chapter 176 and the Legislature may very well have intended by the passage of Chapter 59-1909 and Chapter 63-1983 to grant this power, as well as the authority with respect to off-street parking for commercial purposes in said R-1A and R-l zones as given in said Section 39-5. (The entire zoning ordinances of the City of Tampa have not been introduced in evidence so it has not been possible within the record in this case, to determine whether similar powers with respect to other zoning classifications have been given therein to the Board of Adjustment). Such a construction of said Special Acts would, in the opinion of this Court, be entirely proper and logical and more consistent with reason and law than a construction permitting said Board of Adjustment in fact to zone by authorizing it to permit uses prohibited by the zoning ordinances.”
We think the trial judge reached a proper conclusion. Accordingly, the judgment appealed from should be, and it is hereby, affirmed.
HOBSON, C. J., and PIERCE and McNULTY, JJ., concur.

. This was a de novo proceeding pursuant to the provisions of § 176.16-176.21, F.S.A.

. This act was amended by Ch. 63-1983, Laws of Fla.1963. However, the changes effected by the amendment are not pertinent here.

. Josephson v. Autry (Fla.1957), 96 So.2d 784. That case is helpful but materially distinguishable since, there, the purported power to “change the use” was granted by the “goveniing body” of the city, while here, such power is sought from a special act of the legislature.

. See, also, City of Miami Beach v. Weiss (Fla.1969), 217 So.2cl 836.