226 So.2d 805 (1969)
CITY OF MIAMI BEACH, a Florida Municipal Corporation, Petitioner,
v.
Nathan MANILOW and Samuel J. Kanner, As Trustee, Respondents.
No. 37929.
Supreme Court of Florida.
September 10, 1969.
Rehearing Denied October 20, 1969.
Joseph A. Wanick, Miami Beach, Phillip Goldman and Scott, McCarthy, Steel, Hector & Davis, Miami, for petitioner.
Sidney J. Berger and E.F.P. Brigham of Brigham & Brigham, Miami, for respondents.
PER CURIAM.
Conflict certiorari having issued, and argument heard, we have considered the record and briefs, and it appearing that the District Court of Appeal properly disposed of the case, their opinion and decision is adopted by this Court so the Writ of Certiorari having heretofore issued in this cause is 
Discharged.
CARLTON, ADKINS and BOYD, JJ., and MELVIN, Circuit Judge, concur.
DREW, J., concurs specially with Opinion.
ROBERTS, Acting C.J., concurs in part and dissents in part with Opinion.
MANN, District Court Judge, dissents.
ROBERTS, Acting Chief Justice (dissenting in part and agreeing in part).
The history, background, questions involved and factual situation including a plat and photograph are set forth in the opinion of the District Court of Appeal, Third District, reported as 213 So.2d 589 and it would serve no useful purpose to report them here. It will be observed that Manilow and Kanner as Trustees own Lots 1, 2, 3 and 4 Flamingo Bay Subdivision beginning with Lot 1 at the northeast corner of the intersection of Arthur Godfrey Road and Pine Tree Drive, having a frontage of ninety feet on Pine Tree Drive, and Lots 2, 3 and 4 each having a frontage of one hundred feet for a total frontage of 390 feet on Pine Tree Drive. All four lots are approximately 385 feet in depth bordering on Indian Creek. I have no difficulty agreeing with the District Court that on the record here Lots 1 and 2 and perhaps 3 are no longer suitable for single family use, and that such a restriction is not fairly debatable. However, Lot 4 is 290 feet from the intersection and the *806 holding of the District Court that Lot 4 is not fairly debatable produces a legal result in conflict with a long line of decisions of this and other Courts. In my opinion the use for Lot 4 is fairly debatable and therefore should be left to the zoning board. Perhaps if given such authority the board would establish some use that would serve as a buffer zone between the proposed high rise apartment and the beautiful estate area on Pine Tree Drive now existing immediately north of and adjacent to Lot 4 here involved. Such a buffer zone would serve to delay if not prevent the judicial erosion of the estate area zoning.
I would therefore approve that part of the decision sub judice as to Lots 1, 2 and 3, but disapprove as to Lot 4.
Accordingly we should quash that part of the decision relating to Lot 4 with directions that as to such lot, the trial Court be affirmed.
I therefore agree in part and disagree in part with the majority view.
DREW, Justice (concurring specially).
In Euclid, Ohio v. Ambler Realty Company, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), the United States Supreme Court, for the first time, upheld the constitutional validity of a comprehensive zoning ordinance. While up to that time some states had held to the contrary, the power of municipalities to adopt ordinances comprehensively zoning the territory within its limits is now universally recognized. Where particular hardships occur in the enforcement of such regulations, ordinances usually provide for the granting of special exceptions so that such hardships may be at least minimized without impairing the spirit of the legislative enactment. Special exceptions, however, may not be so broad as to amount to a rezoning, for that is a legislative decision.
The situation shown to exist in the neighborhood of the property involved here has been brought about partially by growth and increase of traffic but principally by the acts of the city itself in rezoning, not on a comprehensive or planned basis in the interest of the general welfare, but piecemeal, haphazard and possibly in a wholly arbitrary manner. The city now finds itself on the horns of a self-created dilemma with consequent chaos in the whole area, so far as zoning is concerned. This type of spot zoning has been universally condemned, but there is a parade of cases constantly coming to the courts evidencing a custom of replacing comprehensive, well-planned and thought-out property classifications  comprehensive zoning as defined in Euclid  with spot zoning. Such not only breeds lack of faith in the public in the integrity of such laws but may well result in constitutional infirmity of the whole zoning plan.
Where neighborhoods begin to change, it becomes the duty of the governing body to look at the picture as a whole and not the individual parts. The whole area should be considered for rezoning in a comprehensive manner.
It is a cardinal principle that the legislative power must be exercised in the public interest. When Justice Sutherland in Euclid used, what has now become the keystone of zoning law, the expression "If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control," he was speaking of comprehensive zoning which finds its justifications in some aspect of the police power asserted for the public welfare. I am finding it more and more difficult to apply this principle to situations of the kind presented by this record.
For these, as well as the reasons pronounced in the decision of the District Court which we approve, I concur.
CARLTON, ADKINS and BOYD, JJ., concur.