284 So.2d 456 (1973)
BOARD OF COUNTY COMMISSIONERS, HILLSBOROUGH COUNTY, Florida, Appellants,
v.
Joseph M. RALSTON et al., Appellees.
No. 73-42.
District Court of Appeal of Florida, Second District.
September 28, 1973.
Rehearing Denied November 6, 1973.
*457 A.G. Spicola, Jr., Tampa, for appellants.
J. Michael Shea, Tampa, for appellees.
MANN, Chief Judge.
Ralston Beach lies between the northwest corner of the intersection of Sligh and Habana, in Tampa, and the southeast corner of Lake Egypt. Until recently, all of the shore of Lake Egypt was zoned R-1, for single-family residences. The public beach has long been operated as a non-conforming use. In recent years the appellant commissioners have zoned the western shore of the lake to accommodate a large apartment project. Now the circuit judge has determined that R-1 is unconstitutionally restrictive as applied to the ten acres of appellees' property and ordered rezoning to a classification not less restrictive than R-3, which would permit the apartment project Ralston's prospective buyer plans. We reverse and remand for several reasons.
Judicial authority to order zoning change is limited to those circumstances in which the maintenance of the existing classification is arbitrary, capricious, confiscatory in its effect: in short, unconstitutional. The basic authority to zone lies with these commissioners, and so long as their prescribed limitations on land use are fairly debatable, we are powerless to intervene.
Two principal factors must have influenced the trial judge's decision. First, there is traffic. Sligh Avenue is now a four-lane, heavily traveled road. Habana *458 is narrower, but a feeder street of considerable importance. On the southeast corner of this intersection commercial development has occurred, and the expert witnesses testified that the northwest corner of the intersection, where the beach lies, is very difficult to develop for single-family homes because of its location and the consequent effect on construction financing and buyer resistance. Secondly, the county has allowed apartment development on a third of the lake's shore, on the west side.
The first error is failure of the plaintiffs to show that the R-1 classification, as enlarged by the present authority to maintain a non-conforming public beach, is unreasonable. The testimony relates to R-1 zoning in the abstract. The Ralstons are permitted to retain their commercial enterprise, and to show that the county's retention of R-1 zoning is unconstitutional they must show a deprivation of their particular property rights. This follows as a corollary to the basic principle. There is simply no evidence relating to the continuance of the non-conforming use and its relationship to the process of balancing the public's interest in control of land use and the individual's property rights. County of Brevard v. Woodham, Fla.App. 4th 1969, 223 So.2d 344, is in point.
Secondly, this appeal is taken from an order compelling rezoning to a classification not less restrictive than R-3, on a record not excluding intermediate categories. The witnesses devoted their attention to the unreasonableness of R-1. Nothing is said about R-2, and to jump to R-3 requires an exclusion of the intermediate category as a reasonable possibility. Additionally, a declaration of unreasonableness need not be accompanied by a specific mandate to rezone.
There is another zoning classification which is not technically intermediate, but which is less restrictive than R-1 and ought to be considered here as offering a sound solution to the land use problem. It is described commonly as a planned unit development, and called, in the Zoning Regulations of Hillsborough County, "C-U", or community unit district. The regulations provide that:
"Section 19. "C-U" COMMUNITY UNIT DISTRICT
"A. PURPOSE
"The purpose of the Community Unit Plan (C-U) as stated within The Hillsborough County Zoning Regulations is to provide the maximum of land and design development opportunities in harmony with reasonable area, building coverage, height, setback and service requirements. To provide the means of mixing such appropriate land use as may not otherwise be permitted in any of the established zoning districts; and for other purposes.
"The C-U Zoning District will be applied only upon specific petition therefor by property owners proposing a unique type of planned development in keeping with the purpose of the district as stated above."
There is some mention in the testimony of expert witnesses that resort to this classification, requiring the developer to submit a carefully thought through site plan, would solve some serious traffic and drainage problems foreseen as a consequence of the proposed apartment development. Too, rezoning to R-3 would permit more apartments to be built on the site than the developer, at the early stage of conciliatory negotiation at which the architect's renderings were trotted out, said he intends to build. Site plan approval would eliminate many, if not all, of the neighbors' objections. It would, in addition, permit the county to require single-family residences on the deeper portions of the site, at the western and northern ends of this curving parcel. The Ralstons' expert witnesses concede that single-family dwellings are appropriate *459 there, and an overall plan might provide for them in a harmoniously integrated scheme. Depending as it does on a claim of unconstitutional deprivation of property rights, the landowners must show not only that the R-1 classification, as enlarged by the permitted non-conforming use, is unconstitutionally restrictive, but that the ordinance as a whole affords them no avenue of relief. Their own witnesses attest that a plan submitted under the C-U classification would be well suited to the site. Certainly it would afford greater potential for recognition of the rights of neighbors. The Ralstons have no right to a rezoning to the "highest and best use" of their property. City of Miami v. Zorovich, Fla.App. 3rd 1967, 195 So.2d 31. And they would be presenting a plan to the board having primary legislative authority, rather than seeking a variance based on hardship. Cf. Josephson v. Autrey, Fla. 1957, 96 So.2d 784; Clarke v. DiDio, Fla.App.2d 1969, 226 So.2d 23. Pursuit of approval under C-U zoning would allow a proper degree of negotiation for the protection of interests of the general public consistent with the recognition of the constitutional rights of the landowners, and is certainly an administrative remedy not shown to have been exhausted by the plaintiffs in this case.
The third reversible deficiency is the assumption of the trial court that the entire parcel must be rezoned. The consequence of rezoning the ten acres to R-3 is that existing homes, surrounded now by woods and water, would ultimately abut the driveways and Dempster Dumpsters of an apartment complex, erected on the edges of the Ralston property, which all witnesses concede is suitable for R-1 zoning.
Hillsborough County having zoned a third of Lake Egypt to allow apartments, it may be prophetic to say, "There goes the neighborhood," but it is by no means descriptive of its present condition. Whether any portion of the Ralston property is unconstitutionally burdened by the R-1 classification, ameliorated by the allowance of the non-conforming use and enlarged by the opportunity to seek community unit zoning, is a question we need not reach.
Reversed and remanded.
McNULTY, J., concurs.
LILES, J., dissents.