## AMSTER, et al v. DADE COUNTY
No. 73-328.

Circuit Court, Dade County.

July 23, 1975.

Alan H. Rothstein, Harris Turner and Sidney B. Shapiro, all of Miami, for the petitioners.

Stuart L. Simon, County Attorney, Clifford A. Schulman and Alan S. Gold, Assistant County Attorneys, for the respondent.

DONALD E. STONE, Circuit Judg.e

This matter came on to be heard upon the petition for writ of certiorari to review zoning resolution no. Z-292-72 of the board of county commissioners of Dade County, and the court having examined the briefs and record filed in this cause and having heard argument of counsel and being otherwise duly advised in the premises makes the following findings —

In 1972, petitioners filed an application for a district boundary change for their parcel located from S. W. 117th Avenue (Snapper Creek Canal Road) to the West Dade Expressway between 94th Street and S. W. 96th Street in Dade County. The application sought to change the zoning of the parcel from GU (interim use) to a combination of RU-4M (modified apartment house — 35 units per acre density), RU-TH (townhouse — 8.5 units density per acre) and RU-1 (single family residential use). The record reflects the recommendations of the zoning director and planning department of the county for denial of the application as well as a similar recommendation of the Dade County Zoning Appeals Board.

These recommendations were part of the record before the board of county commissioners at the hearing held on this application on December 7, 1972 and it also appeared that properties to the north and south of the subject parcel, separated therefrom by large vacant land areas, had already been zoned in what is referred to as "rainbow zoning" similar to that requested by petitioners. At that hearing the county staff recommended to the commission that the application should be denied with prejudice in that the density resulting from the application would significantly worsen an already unacceptable traffic situation. Moreover, concern was expressed at the hearing as to the propriety of the zoning classification for the parcels north and south of the subject land since it was evident that the grant of the application would result in the creation of a high-density apartment corridor in west Dade County. Accordingly, the county commission denied the requested district boundary changes without prejudice and shortly thereafter the county manager initiated a building and zoning moratorium in the area so that a comprehensive study could be done as to the future development of this area of the county.

In May of 1973 the Metropolitan Dade County Planning Department published the South Dade Junior College Area Study, which made extensive findings as to the socio-economic conditions, land use characteristics, and urban facilities and services of the area in which petitioners' parcel is located. In the interim, petitioners filed their petition for writ of certiorari and moved for an extension of time in which to file the brief and record in this cause pending the outcome of said study and the end of the moratorium.

The results of the study indicated recommendations for drastic reductions in density in this area of the county including the parcels that had been "rainbow" zoned to the north and south of petitioners' property.

As a result of the study the director of the Dade County Building and Zoning Department filed applications for rezoning for the

24

"rainbow" zoned parcels. In August of 1973, the southerly parcel was rezoned so that the "rainbow" zoning classifications were maintained on the north one-half of the property but were reduced through agreement of the landowners to a density of 19 units per acre from its previously zoned maximum of 23 units per acre. The southern half of the property was initially rezoned to a RU-1 single family residential classification but subsequently rezoned to an RU-TH classification allowing 8.5 units per acre.

The parcel to the north of petitioners' property was rezoned in October of 1973 in its entirety to an RU-TH classification which completely abolished the "rainbow" zoning previously existing on the parcel.

As a result of these actions, the zoning character of the area encompassing petitioners' property has completely changed subsequent to the institution of the building moratorium and completion of the study and the zoning changes thereafter.

In determining whether or not the action of the county commission in December of 1972 was appropriate the standard utilized by the court is whether or not that action was "fairly debatable." That is, if the question of whether the zoning action meets the consitutional test of serving the health, safety, morals or general welfare of the public and is open to dispute or controversy on grounds that make sense, then the court should not substitute its judgment for that of the zoning authority. Smith v. City of Miami Beach, Fla. App. 1968, 213 So.2d 281, cert. denied, Fla. 1969, 220 So.2d 624; City of Miami Beach v. Wiesen, Fla. 1956, 86 So.2d 442; City of Miami Beach v. Lachman, Fla. 1953, 71 So.2d 148; Davis v. Situs, Inc., Fla. App. 1973, 275 So.2d 600.

In the instant cause, the board of county commissioners, as the legislative zoning body, was reluctant to substantially increase the density of the area and add significantly to its traffic congestion by determining a land use classification which would substantially impact on neighboring vacant property without first considering a comprehensive study of the entire area. Clearly, it is within the ambit of the police power to avoid an overcrowding of the land and an undue concentration of population as well as to prevent significant traffic congestion. See City of Miami Beach v. Lachman, supra; County of Brevard v. Woodham, Fla. App. 1969, 223 So.2d 344, cert. denied, Fla. 1969, 229 So.2d 872; Watson v. Mayflower Property, Inc., Fla. App. 1969, 223 So.2d 368; City of Miami Beach v. Weiss, Fla. 1969, 217 So.2d 836.

Moreover, where neighborhoods begin to change it becomes the duty of the governing body to look at the picture as a whole and not the individual parts. Thus, the whole area should be considered

for rezoning in a comprehensive manner. See the concurring opinion of Justic Drew in City of Miami Beach v. Manilow, Fla. 1969, 226 So.2d 805, 806. The situation in this cause is somewhat analogous to that encountered by a municipality when it wishes to preserve the status quo of an unzoned section or sections of the city pending the adoption of a comprehensive zoning plan. The validity of so-called "stop-gap" or "interim" ordinances enacted for such purpose has been sustained in a number of cases and by the greater weight of authority. In City of Miami v. Ross, Fla. 1954, 76 So.2d 152, the Supreme Court noted at page 154 —

> "It is a matter of common knowledge that a zoning plan of the extent contemplated in the instant case cannot be made in a day; therefore, we may take judicial notice of the fact that it will take much time to work out the details of such a plan and that obviously it would be destructive of the plan if, during the period of its incubation, parties seeking to evade the operation thereof should be permitted to enter upon a course of construction which might progress so far as to defeat in whole or in part, the ultimate execution of the plan."

> "It would be similarly disruptive of the city's area-wide plan proposed for the district to require it to permit non-conforming uses during the incubation period of the new plan; but the city should, of course, be required to adopt and put into effect such plan as rapidly as is reasonably possible."

In addition, the court notes that the denial of petitioners' application was supported by the recommendations of the county staff and the zoning appeals board and these recommendations were part of the record before the commission and were probative to support the application of the "fairly debatable" rule. Metropolitan Dade County v. Fletcher, Fla. App. 1975, 311 So.2d 738; Hall v. Korth, Fla. App. 1971, 244 So.2d 766; Miles v. Dade County, Fla. App. 1972, 260 So.2d 553.

In this cause, petitioners' application for an intensive zoning use was denied pending the outcome of the South-Dade Junior College Area Study. This study is now completed and the commission has considered and acted upon other applications for zoning changes in accordance therewith. It is now appropriate for petitioners to file a new application for a zoning classification commensurate with the study and now existing land uses in the area since the zoning character of the area has changed substantially since the initial application. Thus, the legislative zoning authority should now be permitted without restraint or direction to consider this application

in light of the presently existing needs and zoning developments in the area concerned. This determination is one that is solely legislative in nature and a function that should not and cannot be assumed by the courts. Dade County v. McGeary, Fla. App. 1974, 291 So.2d 28; Hillsborough County v. Ralston, Fla. App. 1973, 284 So.2d 456.

Accordingly, it is ordered and adjudged that the petition for writ of certiorari sought by the petitioners is denied, and this cause is dismissed without prejudice to the filing by petitioners of a new zoning application notwithstanding any time limitations imposed on such a filing under presently existing county ordinances.