## NEFF v. BOWMER
No. 80-3523
Circuit Court, Hillsborough County
January 30, 1981
February 24, 1981 — Supplemental Final Judgment

Theodore C. Taub, Marsh G. Rydberg, for plaintiffs.

Donald A. Pleasants, Shackleford, Farrior, Stallings & Evans, for defendants.

Salvatore Territo, Assistant City Attorney, for City of Tampa.

JOHN M. GILBERT, Circuit Judge.

## SUMMARY FINAL JUDGMENT

THIS CAUSE came on to be heard on the Motions for Summary Judgment filled by Plaintiffs, VIVIAN NEFF and CARLETTA MYERS and Defendants, LARRY MEADOWS and EUGENE SMITH (hereinafter "Developers").

This matter arose as an action for declaratory and injunctive relief, as well as a petition for writ of certiorari, from the actions of the Board of County Commissioners of Hillsborough County, Florida (hereinafter "Board") and Defendant, Andrew D. Argintar (hereinafter "Zoning Hearing Officer") pertaining to a rezoning granted by the Zoning Hearing Officer pursuant to Hillsborough County Zoning Petition No.: 79-134, in which the Zoning Hearing Officer rezoned a parcel of property owned by the Developers from "A", Agricultural District to "C-U", Community Unit District under the Hillsborough County zoning regulations.

The actions of the Zoning Hearing Officer and of the Board were taken pursuant to Chapter 78-524, Laws of Florida (hereinafter "Statute") which Plaintiffs contend is unconstitutional as violative of Article III, §11(a)(1) and Article II, §3 of the Florida Constitution as well as of the equal protection and due process of law clauses of the Florida and Federal Constitutions.

The principal issue before the Court is whether, as Plaintiffs contend, the Special Act creating the Hillsborough County Zoning Hearing Officer system is unconstitutional. If so, the Zoning Hearing Officer's rezoning of certain real property proximate to their land is void.

Plaintiffs' two major constitutional arguments are distinct, although conceptually similar. The first relates to Article III, Section 11(a) (1) of the Florida Constitution, and the second to Article II, Section 3.

Plaintiffs contend that Chapter 78-524, Laws of Florida (hereinafter the "Statute"), violates both of these constitutional proscriptions.

Both the Board and the Developers contend that the Zoning Hearing Officer properly rezoned the property and that the Statute is constitutional. The Board also challenges Plaintiffs' standing to bring this action.

THE COURT FINDS:

1. That Plaintiffs have standing to bring this action. Plaintiffs are citizens and taxpayers of Hillsborough County, are within the area for which notice of a public hearing was required, are affected and aggrieved by the decision being challenged and were permitted to appeal the Zoning Hearing Officer's decision. *Renard v. Dade County,* 249 So.2d 500 (Fla. 3d D.C.A. 1971), *aff'd.* 261 So.2d 832 (Fla. 1971); *Skaggs-Albertson's v. ABC Liquors, Inc.,* 363 So.2d 1082 (Fla. 1978); *Upper Keys Citizens Association, Inc. v. Wedel,* 341 So.2d 1062 (Fla. 3d D.C.A. 1977); *Skaggs-Albertson's Properties v. Michel's Belleair Bluffs Pharmacy, Inc.,* 332 So.2d 113 (Fla. 2d D.C.A. 1976).

2. Having found that Plaintiffs have standing to bring this action and challenge the constitutionality of Chapter 78-524, the Court finds that the Statute is unconstitutional under both Article III, Section 11(a)(1) and Article II, Section 3 of the Florida Constitution. Clearly, Florida zoning is a legislative function. *Gulf & Eastern Development Corp. v. City of Ft. Lauderdale,* 354 So.2d 57 (Fla. 1978); *City of Miami Beach v. Weiss,* 217 So.2d 836 (Fla. 1969); *Josephson v. Autrey,* 96 So.2d 784 (Fla. 1957); *Dade County v. Inversiones Rafamar, S.A.,* 360 So.2d 1130 (Fla. 3d D.C.A. 1977); *City of Coral Gables v. Deschamps,* 242 So.2d 210 (Fla. 3d D.C.A. 1969); *Allen v. Secor,* 105 So.2d 586 (Fla. 2d D.C.A. 1967); and *McGee v. City of Cocoa,* 168 So.2d 766 (Fla. 2d D.C.A. 1964).

The Board has a duty to handle zoning matters within its jurisdiction and it is not free to abdicate this responsibility to others. The amending of a zoning ordinance is a purely legislative function. 7 Fla.Jur.2d, *Building, Zoning and Land Controls,* §56.

Defendants would have the Court view the Statute as one effecting a mere incidental or procedural change in the zoning process. In fact, the Statute creates a fundamentally and substantively different system whereby the zoning ordinance is amended by non-legislators. Law is changed and created by decisions of zoning hearing officers.

A careful analysis of the Statute, applying the traditional rules of statutory construction, demonstrates that the Statute was intended to

divest the Board of its jurisdiction over rezonings, even those initiated by the Board. The Statute was enacted to provide a different procedure for Hillsborough County rezonings than for that utilized in other counties. According to general law, §125.01 and .66, *Fla. Stat.,* boards of county commissioners have jurisdiction over zoning matters and must exercise that jurisdiction according to the statutory procedure.[1]

The Statute supersedes and effectively repeals applicability of the general law in the governing jurisdictions affected (Tampa and Hillsborough County) because the Statute, as the last expression of the legislature, controls. 30 Fla.Jur., *Statutes,* §158. Further, a special law referring to local matters supersedes or repeals an earlier or contemporary general law. 30 Fla.Jur., *Statutes,* §166. The effect of the Statute, then, is to create an entirely new zoning system in Hillsborough County.

Analysis of the Statute clarifies the new procedure. The Board retains its traditional role to enact "text amendments", concerning setbacks, building heights, lot sizes, types of zoning classifications, etc. On the other hand, the Statute strips the Board of its authority to consider, in the first instance, rezonings, or "map amendments". (A "map amendment" is the colloquial term used to refer to a change in the County's zoning map [sometimes called the zoning atlas] whereby particular real property is rezoned from one classification to another). The zoning map is incorporated by reference into the County's zoning ordinance and constitutes part of the substance of the ordinance, which is law; in short, a "map amendment" actually amends the County's ordinance.

In other words, under the Statute all rezonings are initially considered by the hearing officers, who conduct the public hearings, make findings of fact and ultimately determine whether the requested rezoning should be granted or denied. The Statute does not distinguish rezonings instituted by the Board from private rezonings. Further, the Statute does not limit the size and scope of the rezonings handled through the statutory hearing officer process. The hearing officers are given "final authority" over all rezonings irrespective of the size of the parcel, even so-called

---

[1]—Contrary to the Board's suggestion, §125.66, *Fla. Stat.,* provides the procedure by which the Board shall exercise its zoning power both in zoning actions initiated by the Board and in rezonings initiated at the behest of private parties. The Attorney General in an opinion concerning §166.041, *Fla. Stat.,* which contains identical language as to rezonings of real property by cities, confirmed that the established procedure must be followed when property is being rezoned solely upon the application of the property owner as well as on rezonings initiated by the governing body. AGO 76-224, November 16, 1976.

"area rezonings" which formerly were initiated by the Board. The Board no longer has the jurisdiction or duty to rezone real property on its own; it is subject to the Statute and to the hearing officer process. The inescapable conclusion is that the Statute alters the nature of the zoning process from legislative to quasi-judicial. Such a fundamental alteration in the inherent character of zoning constitutes more than an incidental impact on the Board's jurisdiction and duties; it restructures them entirely.

The Statute alters the zoning process in a manner which the Florida courts already have rejected. Characterization of zoning as quasi-judicial was specifically rejected in *Eastside Properties, Inc. v. Dade County,* 358 So.2d 873 (Fla. 3d D.C.A. 1978). Zoning has consistently been held to be legislative in nature because zoning laws and regulations constitute an exercise of the police power. To be valid, zoning laws must be related to the public welfare, safety and morals. *City of Miami Beach v. 8701 Collins Avenue,* 77 So.2d 428 (Fla. 1953); *Allapattah Community Assoc., Inc. of Florida v. City of Miami,* 379 So.2d 387 (Fla. 3d D.C.A. 1980); 7 Fla.Jur.2d, *Building, Zoning and Land Controls,* §57. The legislature is the only body constitutionally permitted to enact police power legislation, not a quasi-judicial officer.

The purpose, and effect, of the Statute is to usurp the Board's duty and jurisdiction over rezoning real property and to vest that responsibility and power in a quasi-judicial, administrative officer. Such a special law violates Article III, Section II(a)(1) of the Florida Constitution because it pertains to the jurisdiction and duties of the Board. The constitutional proscription is designed to insure that all boards of county commissioners, except those in chartered counties, exercise uniform duties and jurisdiction. Its purpose is to eliminate special laws applicable only to some county commissioners. The Statute violates that purpose.

The Board retains very little zoning authority under the Statute. Section 4(5) provides:

> The decision of the hearing officer shall be *final,* but a party aggrieved by the action of the hearing officer may appeal the action to the respective governing body. The governing body, on its own motion, by a majority vote, *may review* the action of a hearing officer. The respective governing body shall prescribe the procedures for such an appeal or review. Upon appeal or review, the respective governing body shall consider the record of the hearing officer's action and *may allow* the parties to the appeal to present *oral argument.* (Emphasis supplied).

The inherent defects in the Statute become apparent upon analysis of this section. First, the Statute confers on the zoning hearing officers "final" authority regarding all applications for zoning changes. Hearing officers not only conduct public hearings and make findings of fact; they actually rezone property. The latter aspect of their power is the fatal flaw in the hearing officer system. The county's zoning map, and thereby the zoning ordinance, is altered as a result of the decision of the hearing officer. The zoning classification of the Developers' property was changed only by and as a direct result of the hearing officer's decision.

If the hearing officers, like special masters or planning commissions, merely made recommendations after reviewing the facts, the Statute would be less susceptible to attack. The Statute goes too far by authorizing the hearing officers to amend the governing body's official zoning map.

Further, the governing body is not required to review the actions of the hearing officers; the Statute merely permits the governing body to review appeals. The only mandatory language regarding appeals is that the governing body must prescribe procedures for review. The Board has done so in its procedural manual, which at Chapter V, §05.00, provides:

> Upon receipt of the notice of appeal, the Board of County
> Commissioners shall, by a majority vote, determine *whether*
> to consider said appeal. (Emphasis supplied).

Taking the language of the Statute and of the procedural manual together, it is clear that the Board has total discretion as to whether to consider appeals from decisions of zoning hearing officers (Tampa City Council exercises similar discretion). Under the Statute, then, the vast majority of the Board's zoning jurisdiction has been vested in the hearing officers.

In *Brandon Planning and Zoning Authority v. Burns,* 304 So.2d 121 (Fla. 1974), the Supreme Court held that a special act establishing an authority and vesting it with exclusive power over planning and zoning in one portion of Hillsborough County unconstitutionally violated Article III, Section 11(a)(1) of the Florida Constitution. The Court distinguished special acts which have a valid purpose and which only add to the duties of constitutional officers from those which usurp rights, powers and privileges conferred by general law on county officers. The Brandon Act was within the latter category and was unconstitutional.

The basic purpose of the Brandon Act was found to be a removal of the Board's zoning jurisdiction within the Brandon area. The Court held that such a transfer of jurisdiction could not be done by special act. The Statute is analagous. It removes the Board's zoning authority and, similarly, cannot withstand constitutional scrutiny.

The Statute improperly delegates legislative authority in contravention of Article II, Section 3 of the Florida Constitution. In a thorough and well-reasoned opinion, the Florida Supreme Court held that §380.05, *Fla. Stat.,* unconstitutionally delegates legislative authority to an administrative body. *Askew v. Cross Key Waterways,* 372 So.2d 913 (Fla. 1978). The Act, which deals with designation of areas of critical state concern and which affects virtually all development in such areas, vested the fundamental legislative task of determining which areas and resources are in the greatest need of protection in the Administrative Commission composed of the Governor and his cabinet.

The Court distinguished Florida's Constitution from those of Washington State and the United States. The latter two provide only that legislative power is initially and fundamentally delegated to legislative bodies and that such power may be redelegated to administrative agencies provided that sufficient procedural safeguards are established. The Florida Constitution and those of the majority of states repose legislative power exclusively in the legislature. As the Court opined regarding the nondelegation doctrine:

> Regardless of the criticism of the courts' application of the doctrine, we nevertheless conclude that it represents a recognition of the express limitation contained in the second sentence in Article II, Section 3 of our Constitution. Under the fundamental document adopted and several times ratified by the citizens of this State, the legislature is not free to redelegate to an administrative body so much of its lawmaking power as it may deem expedient. 372 So.2d 913, 924.

Subsequently, in *Florida Canners Association v. State,* 371 So.2d 503 (Fla. 2d D.C.A. 1979), the Second District, citing *Askew v. Cross Key,* opined:

> The fundamental principle that legislative power may not be delegated to an administrative agency is more firmly embedded in Florida law than in the law of some other jurisdictions. 371 So.2d 503, 511.

The court continued:

> The legislature may not delegate the power to enact a law, or to declare what the law shall be, or to exercise an unrestricted discretion in applying a law; but it may enact a law complete in itself, designed to accomplish a general public purpose, and may expressly authorize designated officials within definite valid limitations to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose. 371 So.2d 503, 512.

*Askew* and *Florida Canners* establish a two-tiered approach to determination of non-delegation questions. First, if the delegated authority is lawmaking, then any attempt at delegation is void. Second, if a law, "complete in itself", has been enacted, the legislature may delegate the power to enforce that law to an administrative officer or board provided that adequate standards and guidelines are provided.

The delegation to the zoning hearing officers is impermissible because it requires them to legislate. Each time a zoning hearing officer approves a request for rezoning, he enacts law. The county zoning map is amended and, accordingly, the zoning ordinance is amended. To understand the legislative nature of the hearing officers' actions, it is helpful to distinguish the power to amend the zoning map from the power to grant variances and from the process of comprehensive planning.

Comprehensive planning is a process involving the systematic development of a community with reference to the location, character and extent of streets, squares, parks, etc. It considers the physical development of a community in relation to its social and economic well-being by developing a "master plan" based on comprehensive surveys and studies of present conditions and the prospects for future growth in the area. 7 Fla.Jur.2d *Building, Zoning and Land Controls,* §54. It is a broad policy statement designed to assist growth management. It serves as a guide, and only a guide, in the zoning and rezoning process.

The Hillsborough County Horizon 2000 plan is a comprehensive planning ordinance. It provides guidelines for future growth; it is not a definitive zoning map. For example, in the Horizon 2000 map's "Urban Development Area", residential, commercial or industrial uses are anticipated. The fact that certain real property is located in an "Urban Development Area" does not mean that commercial or industrial uses can be made of the land unless the parcel is also zoned commercial or industrial. If it is zoned residential, the property owner must have the

land rezoned for commercial or industrial use, notwithstanding the Horizon 2000 designation.

Zoning involves the division of a local community into districts and the regulation of land, buildings and structures according to their construction, nature and extent of use, etc. "A zoning law or ordinance is a legislative act representing a legislative determination and judgment." 7 Fla.Jur.2d, *Building, Zoning and Land Controls,* §53. Zoning is the function which primarily affects real property. Comprehensive planning allows the legislative body to coordinate and establish harmonious zoning laws; it is a tool to assist lawmakers to exercise their zoning jurisdiction effectively.

Variances, on the other hand, are modifications of the zoning regulations which may be granted if not contrary to the public interest and if conditions, peculiar to the property and not the result of the applicant's actions, create an unnecessary and undue hardship. 7 Fla.Jur.2d, *Building, Zoning and Land Controls,* §140. Rezoning has been distinguished from variances as follows:

> . . . [I]n a legal sense, rezoning ordinarily contemplates a change in existing zoning rules and regulations within a district, subdivision, or other comparatively large area in a given governmental unit, which theretofore has been uniformly zoned in its entirety, while the granting of a variance or exception usually contemplates only a special exception to existing zoning rules and regulations in a specific instance permitting a non-conforming use in order to alleviate undue burden or "unnecessary hardship" upon the property owner which the zoning rules and regulations otherwise impose. *Troup v. Bird,* 53 So.2d 717, 720 (Fla. 1951).

A variance, then, does not rezone property. It merely allows the nonconforming use of property. The zoning of the land remains the same. The zoning map is not altered.

For example, in *Clarke v. Morgan,* 327 So.2d 769 (Fla. 1975), the Supreme Court examined the authority of a board of adjustment to grant use variances. Although it rejected the argument that such variances are tantamount to an improper delegation of zoning authority, the Court reaffirmed its prior holding in *Josephson v. Autrey,* 96 So.2d 784 (Fla. 1975) that "in no instance" may a board of adjustment "engage in amendments of the basic zoning ordinance, which is a legislative function". 327 So.2d 769, 773. In other words, the Court re-emphasized its longstanding holding that delegation of the legislative function to

rezone is impermissible; it merely found that use variances are not equivalent to rezonings. *Clarke v. Morgan, supra; Josephson v. Autrey, supra; Clarke v. DiDio,* 226 So.2d 23 (Fla. 2d D.C.A. 1969).

The Statute here unequivocally and unambiguously delegates to the zoning hearing officers the power to rezone property. It does not delegate to the hearing officer the power to grant variances; they are given the lawmaking function of zoning itself.

3. The court recognizes the impact of this decision on the zoning process in the governmental jurisdictions affected by Chapter 78-524. The Court finds that it would not be in the public interest and would work a hardship on those affected by decisions of zoning hearing officers, which were legislatively intended to be final and entered in good faith reliance on the Statute, to hold the Statute null and void since its effective date of January 1, 1979. Accordingly, except for the zoning actions which precipitated this lawsuit, which are hereby found to be null and void *ab initio,* the holding herein that Chapter 78-524 is unconstitutional shall not apply to those decisions of hearing officers entered prior to the date of this Judgment.*** The Court is of the opinion that it is not required, in holding the Statute unconstitutional, to do so on a completely retroactive basis. *City of Tampa v. G.T.E. Automatic Electric, Inc.,* 337 So.2d 844 (Fla. 2nd D.C.A. 1976); *Benyard v. Wainwright,* 322 So.2d 473 (Fla. 1975); *Gulesian v. Dade County School Board,* 281 So.2d 325 (Fla. 1973); *Interlachen Lakes Estates v. Snyder,* 304 So.2d 433 (Fla. 1973); *City of Tampa v. Birdsong Motors, Inc.,* 261 So.2d 1 (Fla. 1972); *City of Fort Lauderdale v. Casino Realty, Inc.,* 313 So.2d 649 (Fla. 1975).

In addition to the Statute's constitutional defects, Plaintiffs have raised several other grounds for relief. Since the Court finds that the principal constitutional issues are paramount and dispositive, it is not necessary for the Court to make findings regarding any of the other grounds Plaintiffs assert for relief.

IT IS THEREUPON ORDERED and ADJUDGED as follows:

1. Chapter 78-524, Laws of Florida, is hereby declared to be unconstitutional.

2. Hillsborough County Ordinance 78-18 is hereby declared to be unconstitutional.

---

***Provided however that this judgment shall not deprive anyone of any appellate rights attaching to decisions of zoning hearing officers rendered prior to the date of this judgment.

3. The foregoing declarations of unconstitutionality are to be applied prospectively as specified in Finding 3 of this Judgment. Any decision by any zoning hearing officer entered subsequent to the date of this Judgment is a nullity.

4. The decision of the Zoning Hearing Officer granting Petition No. 79-134 and rezoning the property to C-U is null and void.

5. The decision of the Board affirming the decision of the Zoning Hearing Officer in Petition No. 79-134 is null and void.

6. The Board, the Hillsborough County Building and Zoning Department and their agents, employees and persons acting in concert therewith are prohibited, restrained and enjoined from issuing any permit or taking any action to facilitate or implement the use of said property for any use permitted under the C-U zoning regulations of Hillsborough County.

7. Any permit or other governmental authorization issued by the Board, the Hillsborough County Building and Zoning Department, their agents, employees and persons acting in concert therewith to date as a consequence of the granting of the said Petition and the affirmance thereof is null and void.

8. Developers, their successors or assigns, and any other person in possession of or custody of the property are mandatorily restrained and enjoined from using said property except pursuant to its zoning classification, i.e., "A", extant prior to the decision of the Zoning Hearing Officer which has been herein declared to be null and void.

9. Plaintiffs are entitled to recover their costs herein against the Defendants, the assessment of which the court reserves.

10. Service of the injunctions on the persons hereby enjoined shall be sufficiently effected and binding upon such persons upon furnishing a copy hereof to counsel of record for the Board and the Developers.

## SUPPLEMENTAL FINAL JUDGMENT

THIS CAUSE came on to be heard on the City of Tampa's Motion to Intervene and Motion for Clarification. Plaintiffs did not oppose the City's intervention. The City requested the Court to determine whether its Summary Final Judgment dated January 30, 1981, which declared Chapter 78-524, Laws of Florida, to be unconstitutional, applies to the City of Tampa.

After consideration of the memoranda and argument of counsel for the City and Plaintiffs, the Court finds as follows:

(a) Zoning, at whatever level of government, is a legislative function.

(b) Article VIII, Section 2(b) of the Florida Constitution requires each municipal legislative body to be elective.

(c) The State Legislature may not delegate to anyone other than a municipality's elective body the municipality's legislative function.

(d) The zoning powers of municipalities are derived from Article VIII, Section 2(b) of the Florida Constitution and the Municipal Home Rule Powers Act, Chapter 166, *Fla. Stat. City of Temple Terrace v. Hillsborough Association of Retarded Citizens,* 322 So.2d 571 (Fla. 2d D.C.A. 1975), *aff'd.,* 332 So.2d 610 (Fla. 1976). Section 166.042, *Fla. Stat.,* demonstrates the legislative intent by abolishing Chapter 176, *Fla. Stat.*

Based on the foregoing and the applicable findings in the Court's Final Summary Judgment dated January 30, 1981, it is thereupon

ORDERED AND ADJUDGED as follows:

1. The City's Motion to Intervene is hereby granted.

2. The Court's Summary Final Judgment dated January 30, 1981 is hereby ratified and confirmed in all respects.

3. Chapter 78-524, Laws of Florida, is hereby declared to be unconstitutional as applied to the City of Tampa.

4. Section 43-96 of the City of Tampa Code of Ordinances is hereby declared to be unconstitutional.

5. In order to promote uniformity between the jurisdictions this additional clarifying declaration of unconstitutionality is to be applied prospectively from January 30, 1981. Any decision by a City of Tampa zoning hearing officer entered subsequent to January 30, 1981 is a nullity.